**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.  14-CIV-22131-BLOOM/Valle**

R/V BEACON, LLC,

      Plaintiff,

v.

UNDERWATER ARCHEOLOGY &
EXPLORATION CORP.,
JOHN CHATTERTON, and
JOHN MATTERA,

      Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court upon Defendant John Chatterton's Motion to Dismiss, ECF No. [9].  The Court has reviewed the Motion, all opposing and supporting filings, and the record in this case, and is otherwise fully advised in the premises.  For the reasons that follow, the Court now grants Defendant's Motion.

## I. BACKGROUND[1]

Plaintiff R/V Beacon, LLC ("Beacon") is a Louisiana corporation which owns and operates the 98-foot R/V Beacon ("the Vessel"), a vessel equipped for research and salvage operations, including treasure salvage.  ECF No. [1] at ¶¶ 3-4.  On March 8, 2011, Beacon entered into a three-year contract ("the Charter") with Defendant Underwater Archaeology & Exploration Corp. ("Underwater"), wherein Underwater agreed to charter the Vessel for use in a

---

[1] The facts are garnered from Plaintiff's Complaint and attached documentation, ECF No. [1].

treasure hunting enterprise.[2]  *See id.* at ¶¶ 9, 11.  The enterprise allegedly commenced during the summer and fall of 2011, when Underwater began treasure hunting operations in the Dominican Republic.  *Id.* at ¶ 20.  Despite supposedly making several finds, in the winter of 2011, the salvage operation came to a halt, placing a strain on the relationship between the parties.

Pursuant to the Charter, Underwater was required to pay Beacon twenty-percent of the value of all nongovernmental treasure recovered.  *Id.* at ¶ 12.  As Beacon's success on the Charter was directly tied with Underwater's treasure capture, it was in Beacon's best interest that the operation be a productive one.  Accordingly, the Charter included terms which required Underwater to "actively utilize the vessel on as many days as possible" to recover treasure.  *See id.* at ¶ 11.  Although use of the Vessel was seemingly required under the Charter, the Vessel has not left port since December 10, 2011.  *Id.* at ¶ 25.  That is not to say that there has not been contact between the parties; in fact, throughout 2011, 2012, and 2013, significant communication occurred regarding the state of the Vessel and the need for various repairs.

Although the Charter states that Underwater had "inspected the Vessel and found it to be in acceptable condition for its intended use, and in every respect seaworthy," Defendant Chatterton allegedly began demanding that Beacon pay for improvements and repairs shortly after taking possession of the Vessel.  *Id.* at ¶¶ 49, 51-52.  The Charter provides for the upkeep of the Vessel, specifically, Underwater is responsible for all costs related to operation and maintenance of the Vessel; however, hull, engine, and other major repairs are relegated to Beacon as owner.  *Id.* at ¶¶ 10, 15.  While Beacon contends that it was not contractually obligated to make such improvements, it nonetheless made several payments to Underwater in

---

[2] Although the Complaint does not make such facts readily apparent, it appears that Defendants John Chatterton ("Chatterton") and John Mattera ("Mattera") are officers and/or owners of Defendant Underwater Archeology & Exploration Corp.

April 2011, totaling $12,450.52, and purchased a new twenty-horsepower motor for the Vessel's skiff.  *See id.* at ¶¶ 53-55.  In March 2012, Defendant Mattera wrote to Beacon, indicating that further upgrades needed to occur before salvage operations could resume.  *Id.* at ¶¶ 30-31, 59.  Several months later, with exploration still on hiatus, Defendant Mattera informed Beacon that the vessel was too expensive to operate and demanded that Beacon make more repairs.  *Id.* at ¶¶ 31-33, 58-60.  Again, Beacon obliged, sending Underwater $7,000.00 for the replacement of a diesel generator, and $8,000.00 for other expenses.  *See id.* at ¶¶ 62-63, 65-66.  Underwater also claimed to have spent approximately $15,000.00 on other repairs.  *Id.* at ¶ 69.  Beacon again compensated Underwater, sending two payments of $8,000.00.  *Id.* at ¶ 70.  Finally, in 2013 Beacon sent Defendant Mattera approximately $3,000.00 to replace the Vessel's air conditioning unit.  *Id.* at ¶¶ 72-75.

Beacon's willingness to pay for the aforementioned repairs stemmed from its hope that treasure hunting operations would not be further delayed.  *See id.* at ¶ 53.  Nonetheless, in November 2013, Beacon came to the realization that Underwater had no intention to resume operations and had effectively abandoned the Vessel in the Dominican Republic.  *Id.* at ¶ 36.  After inspection, Beacon discovered that many of the repairs that Underwater claims to have completed were not made, most conspicuously, the air conditioning unit and diesel generator had not been replaced.  *See id.* at ¶¶ 67, 76-78.  Beacon was also unable to locate the twenty-horsepower skiff engine.  *Id.* at ¶ 56.

To this day the Vessel remains in the Dominican Republic in defiance of the Charter's requirement that Underwater return the Vessel to port in Bayou Le Batre, Alabama, at the expiration of the arrangement.  *See id.* at ¶¶ 13, 39-41.  Presently, Beacon labors under the belief that Underwater's claims that it invested money in repairing the Vessel were entirely fraudulent.

*Id.* at ¶ 77.  Day by day, Beacon continues to accrue damages based on moorage and caretaker fees.  *See id.* at ¶¶ 81-86.  Accordingly, Beacon commenced the instant litigation, asserting claims for breach of contract (Counts I and II) and breach of oral contract (Count III) against all Defendants, as well as fraud (Count IV) against Defendants Chatterton and Mattera, individually. *See id.* at ¶¶ 80-115.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).  While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at 678; *Thaeter*

*v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  The Supreme Court

was clear that courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

Defendant Chatterton now seeks to dismiss those claims brought against him.  *See* ECF

No. [9].  More specifically, Chatterton asserts that the breach of contract claims must be

dismissed because he is not a party to the Charter, and the fraud claim is both barred by the

maritime economic loss rule and has not been pled with sufficient particularity as required by

Federal Rule of Civil Procedure 9(b).  *See id.*  The Court addresses these arguments in turn.

### A.     Breach of Contract and Piercing the Veil

Although Beacon's claims for breach of the Charter, as well as breach of the oral contract

are seemingly directed against Underwater, Beacon utilizes "Defendants" throughout the Counts

and includes Defendants Chatterton and Mattera in the "wherefore clause."  *See* ECF No. [1] at

¶¶ 80-101.  The Charter states,

> **THIS CHARTER PARTY is entered into between RV Beacon,
> LLC** (hereinafter referred to as "OWNER"), whose address is P.O.
> Box 967, Mohegan Lake, New York 10547, **and Underwater
> Archaeology and Exploration Corp.**, (hereinafter referred to as
> "CHARTERER"), whose address is 1825 Ponce de Leon
> Boulevard, #324, Coral Gables, Florida 33134.

*See id.* at 15 (emphasis added).  At no point does the Charter make mention of either Defendant

Chatterton or Defendant Mattera.  It is axiomatic that a contract cannot bind a nonparty.  *See*

*Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a

contract does not bind one who is not a party to the contract, or who has not in some manner

agreed to accept its terms."); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)

("It goes without saying that a contract cannot bind a nonparty."); *Norfolk S. Ry. Co. v. Groves*,

586 F.3d 1273, 1281-82 (11th Cir. 2009) ("Furthermore, it is a tenet of contract law that a third-party cannot be bound by a contract to which it was not a party." (citation omitted)).  Beacon has not adduced any facts from which the Court may infer that Defendant Chatterton, in his individual capacity, has assented to the terms of the Charter.  Indeed, Beacon concedes this point, stating that "the Complaint never suggests that [Chatterton] was [a party to the Charter], or that he could be sued for breach of contract directly."  ECF No. [18] at 3.  Instead, Beacon asserts that the cause of action is properly brought against Chatterton because damages are being sought from him via piercing the corporate veil.  *See id.* at 3-4.

A corporation and its owners are separate legal entities existing independently of each other.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (quotation omitted)); *see also Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities").  Notwithstanding this general principle, a shareholder may be held liable for the corporation's conduct under certain circumstances.  *See Bestfoods*, 524 U.S. at 62.  When "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud," the corporate veil may be pierced to impose liability on the shareholder.  *Id.* (citation omitted).  Piercing the corporate veil is an available remedy in maritime matters.  *See Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141, 1151 (Fla. 3d DCA 1995) (citing *Swift and Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684 (1950) ("It is clear and well-established that a court presiding over maritime matters does have the power to pierce the corporate veil of a corporation in order to reach the 'alter egos' of a corporate defendant.").

6

"The prerequisites for piercing the veil in federal maritime law are the same as elsewhere," including under Florida law.  *See LIG Ins. Co. v. Inter-Florida Container Transp., Inc.*, 2013 WL 4516104, at *6 (S.D. Fla. Aug. 23, 2013) *aff'd*, 564 F. App'x 495 (11th Cir. 2014) (quoting *Popescu v. CMA CGM*, 2009 WL 5606131, at *8 (S.D. Fla. Nov. 5, 2009)).  Under Florida law, the corporate veil will not be pierced absent a showing of improper conduct.  *Eckhardt v. United States*, 463 F. App'x 852, 855 (11th Cir. 2012) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984)).  Florida law requires that the plaintiff prove three elements in order to pierce the veil and reach the assets of an owner: (1) that the shareholder dominated and controlled the corporation to such an extent that the corporation did not exist independently of ownership and the owners were in fact the "alter egos" of the corporation; (2) that the corporate form was utilized for a fraudulent or improper purpose; and (3) that the fraudulent or improper use of the corporate form caused injury to the plaintiff.  *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citing *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008)); *see also LIG Ins. Co.*, 2013 WL 4516104, at *6 ("To pierce the corporate veil, the individual must have used the corporate entity to perpetrate a fraud or have so dominated and disregarded the corporate entity's corporate form that the corporate entity primarily transacted the individual's personal business rather than its own corporate business." (internal quotation and citation omitted)).

The Complaint is rife with accusations that Underwater inappropriately obtained funds under the guise of making repairs on the Vessel.  *See* ECF No. [1].  However, the only statement or action specifically attributable to Defendant Chatterton is that Chatterton emailed Beacon in April 2011 claiming to have expended "considerable resources into making [the Vessel] operational," and further demanding that Beacon indemnify Underwater for such improvements

or suffer delay of the treasure hunting operation.  *See id.* at ¶¶ 51-53.  Accordingly, Beacon contends that Chatterton repeatedly misrepresented the status of the operation in order to extort further funds from Beacon.  *Id.* at ¶ 103.  As a result of this allegedly fraudulent conduct, Beacon asserts that "Chatterton will ultimately be individually liable for Underwater's breach [of the Charter]."  *See* ECF No. [18] at 4.   However, in this regard, the Complaint is deficient.

First, Beacons' accusations of fraud are unrelated to its claims for breach of contract. The breach of contract claims stem from Underwater's abandonment of the vessel in the Dominican Republic in contravention of the Charter, see ECF No. [1] at ¶¶ 80-86 (Count I), and Underwater's failure to maximize the use of the vessel and pay Beacon its required twenty-percent stake,  see *id.* at ¶¶ 87-96 (Count II).  Essentially, Beacon attempts to hold Defendants Chatterton and Mattera individually liable for Underwater's breach of contract, even though the breach of contract, in this case, did not involve any fraudulent or improper use of the corporate form.  *See Molinos*, 633 F.3d at 1349 (noting that one of the elements required in order to pierce the corporate veil is that "the fraudulent or improper use of the corporate form caused injury to the plaintiff").   While Beacon does allege a multitude of fraudulent acts, those acts are inapplicable to Beacon's claims for breach of contract, which simply allege breach of the specific terms of the Charter, not fraud.

Second, the aforementioned accusations do not reach the level of pleading required under Federal Rule of Civil Procedure and associated Supreme Court precedent.   While Beacon's allegations are not "naked assertions devoid of further factual enhancement," at no point does the Complaint allege that Chatterton was the "alter ego" of Underwater.  Moreover, any asserted misuse of the corporate form by Chatterton is equally unclear.  Defendant Chatterton is forced to infer that Beacon is seeking to pierce the corporate veil simply by his inclusion in the wherefore

clauses of the breach of contract claims.  The Complaint does not set forth sufficient facts to suggest that the Court should ignore the corporate form and hold Chatterton individually liable for Counts I and II.  Accordingly, those claims are dismissed.

Similarly, Count III must also be dismissed as it relates to Defendant Chatterton.  The Complaint alleges that Beacon loaned a "side scan sonar unit" for use in the treasure salvage operations.  ECF No. [1] at ¶¶ 98-99.  Although the loan was made free of charge, Underwater, not necessarily Chatterton himself, allegedly agreed to pay for shipping the unit back to the United States, but did not do so, thereby forcing Beacon to pay $1,500.00 to ship the unit.  *Id.* at ¶¶ 99-100.  Again, there is no indication that Beacon is seeking to pierce the corporate veil other than including Defendant Chatterton in the Count's wherefore clause.  *See id.* at ¶¶ 97-101.  Moreover, there is no evidence of any fraud or improper purpose related to this claim.  As with Counts I and II, Count III appears to be a straightforward breach of contract claim, devoid of any evidence of fraud or improper purpose as is required to pierce the corporate veil.  Therefore, Count III is dismissed as to Defendant Chatterton.  Although it is unlikely that Beacon can properly plead facts sufficient to pierce the corporate veil with respect to its breach of contract claims, in an abundance of caution, the opportunity to replead will nonetheless be granted.  *See Fed. Deposit Ins. Corp. v. Law Office of Rafael Ubieta, P.A.*, 2012 WL 5307152 (S.D. Fla. Oct. 29, 2012) (dismissing breach of contract claims without prejudice because plaintiff's complaint could not satisfy the pleading standard of Rule 8 with respect to piercing the corporate veil).

### B.      Beacon's Fraud Claims

Defendant Chatterton sets forth two reasons as to why he believes Count IV of the Complaint must be dismissed as it relates to him.  First, Chatterton avers that any claim for fraud is barred by the maritime economic loss rule.  *See* ECF No. [9] at 7-8.  In the alternative,

Chatterton asserts that any allegations of fraud do not meet the requirements of Federal Rule of Civil Procedure 9(b). *See id.* at 8-10. The Court is inclined to agree with Chatterton's second contention: Beacon's fraud claim is imprecise and inadequate.

Although the Florida Supreme Court has recently limited the application of the economic loss rule to products liability cases, see *Tiara Condo Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013), no such limitation has been imposed in cases governed by maritime law. Generally, in admiralty, "a party may not recover for economic losses not associated with physical injury." *Kingston Shipping Co. v. State of Florida*, 667 F.2d 34, 35 (11th Cir. 1982). Stated differently, the maritime economic loss rule "provides that a tort action may not lie where the basis for liability arises from a contract." *St. Clair Marine Salvage, Inc. v. M/Y BLUE MARLIN*, 2014 WL 2480587, at *4 (E.D. Mich. June 3, 2014) (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986)). The rule finds its origins in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), where the Supreme Court held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871. Although this matter is distinguishable as Beacon does not seek damages for injury to a product, the maritime economic loss doctrine has been expanded to reach situations where a party is attempting to bring a breach of contract action couched as a tort claim. *See BVI Marine Const. Ltd. v. ECS-Florida, LLC*, 2013 WL 6768646, at *3-4 (S.D. Fla. Dec. 20, 2013). The Supreme Court's decision in *E. River S.S. Corp.* indirectly cautioned that claims sounding in tort but stemming a contractual dispute are often more appropriately remedied pursuant to the contractual relationship. *See* 476 U.S. at 874 ("Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums."); *see also BVI Marine*, 2013 WL

6768646, at *4 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 307–10 (1927)) (noting that "when an enforceable contract exists, it is preferable to resolve disputes on the basis of the contractual relationship").   Thus, a breach of contract claim framed as a tort will be prohibited by the rule.

In *BVI Marine*, this Court was tasked with determining the applicability of the maritime economic loss rule.   Initially, the plaintiff in *BVI Marine* asserted a single claim for breach of contract; however, during the pendency of the litigation, the Florida Supreme Court decided *Tiara Condo. Ass'n*, limiting the Florida economic loss rule to products liability actions.   *See* 2013 WL 6768646, at *1.   Consequently, the plaintiff sought to add tort claims stemming from the same operative facts as such claims were seemingly no longer prohibited under Florida law. *Id.*   The Court permitted amendment, and the defendant's disputes were raised in a motion to dismiss.   *Id.*   While the Court noted that the plaintiff's tort claims would not be forbidden given the Florida Supreme Court's decision in *Tiara*, the maritime economic loss rule had not been similarly limited and did in fact preclude such claims.   *See id.* at *4-5.   Thus, Chatterton now asserts that Beacon is attempting to circumvent the Charter and the maritime economic loss rule by pursuing fraud claims against Chatterton and Mattera individually.   *See* ECF No. [9] at 7.

To the extent Beacon's fraud claims are premised on  Chatterton's failure to abide by the Charter, such claims are barred by the maritime economic loss rule.[3]   *St. Clair*, 2014 WL

---

[3] Beacon devotes a significant portion of its Response to providing a recitation of the history surrounding the maritime economic loss rule, asserting that there currently exist two iterations of the rule, and that this Court should be persuaded by the Ninth Circuit's reasoning in *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007).   *See* ECF No. [18] at 4-12.   However, Beacon's reliance on *Giles* is entirely misplaced.   At no point does the *Giles* decision address the maritime economic loss rule.   *See* 494 F.3d 865.   Further, although *Giles* found that a plaintiff's fraud claim was not barred by the economic loss rule, the Ninth Circuit's holding was unmistakably interpreting and applying Nevada, not Florida, law.   *See id.* at 879 ("Applying the principles set forth by the Nevada Supreme Court in *Calloway*, we hold that Appellants' fraud

2480587, at *4-5 (holding that the plaintiffs tort claim was "inextricably tied" to his breach of contract claim and was therefore barred by the maritime economic loss rule).  However, the economic loss rule does not purport to bar *all* tort claims when the relationship between the parties arose by virtue of a contract.  Indeed, the Third Circuit has noted an emerging trend among jurisdictions which recognizes "a limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independent of the underlying contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 676 (3d Cir. 2002) (citation omitted).[4]  The Supreme Court in *East River* specifically noted that it was not opining on "whether a tort cause of action [could] ever be stated in admiralty when the only damages sought are economic."  *See E. River S.S. Corp.*, 476 U.S. at 871 n.6.

The allegations contained in the Complaint extend well beyond any facts contemplated by the Charter.  In short, the Complaint asserts that Defendants requested money for repairs to the Vessel, but rather than utilize those funds for the stated purpose, Defendants pocketed the money, allegedly converting it to personal uses.[5]  Unlike the situation presented in *BVI Marine* where the plaintiff's tort claims were seemingly related to the contract at issue, Beacon's fraud claim is distinct from its breach of contract claim.  *See BVI Marine*, 2013 WL 6768646, at *4-5.  A cursory examination of the Complaint further validates this assertion.  Beacon's breach of

---

and conversion claims are not barred.").  While the Ninth Circuit did engage in a rigorous investigation of the difficulty courts have faced in applying the economic loss rule, to apply the Ninth Circuit's holding here would be wholly inappropriate.

[4] In making this observation, the Third Circuit in *Wewinski* was concerned solely with the applicability of the standard economic loss rule, not the maritime rule.  *See* 286 F.3d at 670-71.  Therefore, this authority is merely persuasive.

[5] Beacon does not bring a claim for conversion.  *See generally Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1262 (S.D. Fla. 1994) ("Under Florida law, conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time.").

contract claims do not relate to the repairs allegedly made (or not made) on the Vessel; the breach of contract claims stem from Underwater's failure to return the Vessel to the port specified in the Charter, as well as Underwater's failure to both maximize salvage operations and pay Beacon its share under the Charter of the treasure recovered during the brief operation of the Vessel in 2011.[6]  *See* ECF No. [1] at ¶¶ 80-96.  Contrary to Chatterton's contention, Beacon's fraud claims are not inextricably intertwined with its claims for breach of contract.[7] Accordingly, the maritime economic loss rule does not bar Beacon's fraud claims as such claims are not premised upon or related to a breach of the Charter.[8]  *See E. River S.S. Corp.*, 476 U.S. at

---

[6] Beacon also implores the Court to find the economic loss rule inapplicable because Chatterton is a nonparty to the Charter.  *See* ECF No. [18] at 11-12.  Under pre-*Tiara* Florida law, it appears that the economic loss rule would not have barred Beacon's fraud claim as Chatterton is not a party to the related contract.  *See Luigino's Int'l, Inc. v. Miller*, 311 F. App'x 289, 293 (11th Cir. 2009) (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 534 (Fla. 2004), *receded from by Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013)) ("In the absence of contractual privity between [the parties], Florida's economic loss rule does not apply.").  However, the Eleventh Circuit and this Court have noted that this aspect of the economic loss rule does not apply where the individual being sued in tort is an officer of the corporation in contractual privity.  *See Miller*, 311 F. App'x at 294 ("We recognize that contractual privity may not be required when a tort action is barred against a corporation under the economic loss rule and its corporate employee is being sued for the same tortious conduct."); *see also Ben-Yishay v. Mastercraft Dev., LLC* 553 F. Supp. 2d 1360, 1371 (S.D. Fla. 2008).  Moreover, Beacon does not direct the Court to precedent indicating that this limitation is applicable under admiralty law, and the Court is unable to locate the same.  Accordingly, the Court respectfully declines to interject Florida legal principles into federal maritime law.  *See State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1031-32 (5th Cir. 1985) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961)) ("It is well-settled that the invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law.").

[7] Had Beacon premised its breach of contract claims under Paragraph 9 of the Charter, a different result may be warranted.  *See* ECF No. [1] at 16 (stating that "Charterer agrees to pay for all maintenance and upkeep of the vessel during the term of the Charter").  As that is not the case here, the Court does not reach this issue at this time.

[8]  The same result would likely be reached if Florida law were applicable.  Although *Tiara*, limited the scope of the economic loss rule to products liability cases, Justice Pariente, in her concurring opinion, noted that the *Tiara* decision was "neither a monumental upsetting of Florida law nor an expansion of tort law at the expense of contract principles."  *Tiara*, 110 So. 3d at 408

871 n.6.

Because the Court finds that Beacon's fraud claim is not barred by the maritime economic loss rule, an examination of whether such claims conform to the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) is warranted.  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This requirement is intended to alert defendants to the "precise misconduct with which they are charged."  *Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  The Eleventh Circuit has held that a party satisfies the particularity requirement when the pleading sets forth: (1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) it; (3) the content of such statements and the manner in which they caused the plaintiff to be misled; (4) what the defendants obtained as a result of the fraud.  *See Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1236 (S.D. Fla. 2011) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).  However, the Eleventh Circuit has noted that alternative means are also available to a plaintiff attempting to plead fraud.  *Durham*, 847 F.2d 1505.  Indeed, this Court has found the particularity requirement satisfied where the complaint identified who made the

---

(Pariente, J., concurring).  This Court has accepted this observation.  *See Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1369 (S.D. Fla. 2013).  Notably, pre-existing applications of the economic loss rule permitted tort claims to be brought in conjunction with a breach of contract claim so long as the tort was "independent of any breach of contract claim." *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring); *see also Stonecreek-AAA, LLC v. Wells Fargo Bank N.A.*, 2013 WL 5416970 at *6 (S.D. Fla. Sept. 26, 2013) ("[I]n order for a party to bring a valid claim in tort based on a breach of contract, the tort must be distinguishable from or independent of the breach of contract.") (internal quotation and citation removed); *Freeman v. Sharpe Resources Corp.*, 2013 WL 2151723 at *8 (M.D. Fla. May 16, 2013) ("Fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations.").

fraudulent representations, set forth the general time frame in which the misrepresentations were made, the reasons why the representations amounted to fraud, and the alleged scheme in "considerable detail." *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1092-93 (S.D. Fla. 1992).

While the Complaint is replete with allegations of fraud on the part of "Defendants," a mere three paragraphs refer to Defendant Chatterton specifically:

> 51.    Despite [the Charter] on April 29, 2011 CHATTERTON emailed [Beacon] to complain: "I have put considerable resources into making this boat operational, when it was supposed to be seaworthy on March 15th."
>
> 52.    CHATTERTON demanded that PLAINTIFF pay for these improvements and repairs.
>
> 53.    Although PLAINTIFF was not contractually responsible for these payments, PLAINTIFF agreed to pay because the vessel was sitting in port not making money, and CHATTERTON was threatening to delay the whole operation.

ECF No. [1] at ¶¶ 51-53.  More often than not, the Complaint simply states that "Defendants" engaged in some manner of fraud.  *See, e.g., id.* at ¶¶ 55-56 ("Defendants" never purchased the skiff motor, or lost it),  62-63 ("Defendants" claimed they needed to replace the diesel generator).  Even within Beacon's Count for fraud, Beacon continues to commingle which statements were made by whom, referring to both "Defendants," "Individual Defendants," and Defendant Mattera individually.  *See id.* at ¶¶ 102-115.  Although the allegations found in the Complaint vaguely inform Chatterton of the "precise misconduct with which [he is] charged," *Durham*, 847 F.2d at 1511, they do not do so with sufficient particularity under Rule 9(b).  Beacon's fraud claim is a mélange of accusations made against the "Individual Defendants" which fails to include the simplest of accusations: who made what statements.  *Compare S.E.C.*

*v. Spinosa*, 2014 WL 2938487, at *2-3 (S.D. Fla. June 30, 2014) (finding 9(b) satisfied where plaintiff alleged exact statements made by defendant, as well as when such statements were made and how such statements were fraudulent) *with Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1302 (S.D. Fla. 2009) (holding that particularity requirement was not satisfied where plaintiff failed to identify the time, place, or precise statements made).   Other than this failure, Beacon has sufficiently pled the circumstances amounting to fraud.   Nonetheless, this misstep requires dismissal of such claims.   As with Beacon's claims for breach of contract, Count IV is dismissed without prejudice so that Plaintiff may amend if so inclined.

### C.      Punitive Damages

Although doubt has been cast upon the current viability of punitive damages given the Supreme Court's decision in *Atlantic Sounding, Inc. v. Townsend*, 557 U.S. 404 (2009), such nonpecuniary damages are generally disallowed under maritime law.   *See In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. On Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997) ("Unless or until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for nonpecuniary damages such as . . . punitive damages . . . .").   Nevertheless, "[p]unitive damages may be awarded in maritime tort actions where defendant's actions were intentional, deliberate or so wanton and reckless as to demonstrate a conscious disregard of the rights of others." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (quoting *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 354 (1st Cir. 1988)); *see also Doe v. Royal Caribbean Cruises, Ltd.*, 2012 WL 920675, at *2-4 (S.D. Fla. Mar. 19, 2012) (holding that "punitive damages are generally available in personal injury actions arising under the Court's maritime jurisdiction when the

16

defendant engaged in wanton, willful or outrageous conduct").[9]

Here, Defendant Chatterton asserts that Plaintiff has not pled any intentional, deliberate, wanton, or reckless conduct that has caused harm to Beacon.  *See* ECF No. [9] at 10.  The Court respectfully disagrees.  In sum, the Complaint alleges that Beacon sent money to Defendants based on Defendants' false assurances that such fees were to be used for repairs, when, in reality, they were not.  *See* ECF No. [1] at ¶¶ 102-115.  Such allegations certainly qualify as intentional or deliberate conduct resulting in harm to Beacon.  However, because Beacon's fraud claim, as currently pled, necessitates its dismissal under Federal Rule of Civil Procedure 9(b), Beacon's claim for punitive damages is also dismissed.

## IV. CONCLUSION

For the aforementioned reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant John Chatterton's Motion to Dismiss, ECF No. [9], is **GRANTED**.  Counts I through IV of Plaintiff's Complaint, as they relate to Defendant Chatterton, are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff shall file an Amended Complaint containing the guidance provided herein no later than October 14, 2014.  Should Plaintiff fail to submit an Amended Complaint within the required time period, Defendant Chatterton will be dismissed.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 1st day of  October, 2014.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

---

[9] There exists a tension as to whether a plaintiff must demonstrate intentional conduct in order to recover punitive damages in an action pursued under federal admiralty law.  For further discussion on the current state of the law on this issue, see Judge Goodman's concise yet thorough examination in *Doe*, 2012 WL 920675, at *2-4.

Copies to:
Counsel of Record